## THE STATE *v.* JONES.

Under sec. 10 of the stat. of 30 May, 1846, and art. 108 of the constitution, one who has taken an appeal from a judgment convicting him of any offence, may be admitted to bail pending the appeal, where the offence charged is one which would have authorised his admission

3b 9
4+ 904

3 9
Case 2
e110 957
o110 958

3 9
Case 1
116 213

3 9
Case 2
122 315

to bail before conviction. The bond to be executed by the prisoner under such circumstance is a bail bond, and not a recognisance or appeal bond. The inferior court is not entirely divested of jurisdiction by granting the appeal, the judge being still authorised to admit the prisoner to bail; and the bail bond should be made returnable before the inferior court, which alone is authorised to order the execution of the final decree on the appeal. Stat. 26 May, 1840, s. 5.

Where one convicted in a criminal proceeding is admitted to bail pending an appeal, the bond may be executed in the presence of any officer of the court or other person designated by the judge; but the allowing of bail, and the determination of the amount in which the parties are to be bound, are judicial acts, and must be performed by the judge.

No judgment can be rendered against the sureties on a bail bond executed by one admitted to bail pending an appeal from a judgment in a criminal proceeding, where the charge stated in the bond is not such as will warrant any criminal prosecution, where it is not shown that the sureties were aware of the charge actually preferred against the accused and of which he was convicted, nor that they consented to become bound for his appearance to answer any other charge than that stated in the bond. *Per Curiam:* If the cause of taking the bond be incorrectly stated the defect cannot, as regards the sureties, be supplied, as in the case of a recognisance, by reference to the indictment.

APPEAL from the First District Court of New Orleans, *McHenry*, J. The facts of this case are stated in the opinion of the court, *infrâ*.

*Prentiss* and *Finney*, for the appellant. 1. The recognisance is conditioned that defendant should appear before the First District Court, on the first monday in December, 1846, and then and there answer the complaint brought against him, &c.; when, in fact, at the time said recognisance was taken, and also at the time it was declared forfeited, no such complaint was pending in said court, but the same was pending on appeal in the Supreme Court. It is clear that a person cannot be legally recognised to appear and answer a charge of crime in a court different from that where it is pending and triable. The court had no right to bind defendant *Jones* to answer a complaint or charge, while the proceedings were pending on appeal and undecided in the Supreme Court. In other words, he could not at one and the same time, be legally bound to appear in two different courts to answer to the same complaint. The party was convicted in the court below, and sentence pronounced; he took an appeal. From the moment the appeal was taken, the jurisdiction of the court below over the subject matter of the appeal ceased. The only bond or recognisance which the court below was authorised to demand or take, was a recognisance of appeal, the condition of which should have been, that defendant should appear in the Supreme Court, prosecute his appeal, and abide by the judgment of that court. 8 Mart. N. S. 440. 4 La. 205. 7 La. 443. 10 La. 481. 11 La. 198. 14 La. 292. All these are decisions in civil cases, but there is nothing in the constitution or law that makes any distinction between civil and criminal cases, in regard to the effect and operation of an appeal. The reason is the same in both cases.

2. The second error assigned is, that the bond or recognisance sets forth no offence or crime whatever. The condition is that *Jones* should appear, &c., "to answer the complaint brought against him for entering a house without breaking, with intent to steal." There is no such offence known to the laws of Louisiana, as that of "entering a house without breaking with intent to steal." The offence meant to be charged, no doubt, will be found in Bullard & Curry's Digest, 261, s. 7, and is as follows: "If any person, with intent to kill, rob, steal, commit a rape, or to do or perpetrate any other felony, shall in the night time enter without breaking, or in the day time break or enter any dwelling house or out-house thereto adjoining and occupied therewith, or any office, shop, or warehouse, or any ship or vessel lying in the body of a parish, every such offender, &c., being duly convicted shall be punished by solitary imprisonment for a term not exceeding one year, and by confinement after at hard labor not exceeding five years, and be fined not exceeding $1,000." Now, by this statute, the offence consists not in entering any house, with intent to kill, rob, steal, &c., but only in entering a certain sort or class of houses with such intent, to wit: dwelling-houses, out-houses thereto adjoining and occupied therewith, offices, shops, or warehouses. These are the only houses, the entering of which, without breaking, with the intent mentioned, constitutes the

offence set out in the statute. It is admitted that it is not necessary in a mittimus or recognisance, to state the offence with much particularity, but some offence must be stated, or the warrant or recognisance is void ; all the facts need not be stated, but a substantive and positive offence must be. It is very clear that a man cannot be held bound in a recognisance to answer to the State for any thing but what purports to be an offence against the State. These principles are sustained by the authorities here cited: "It is essential to a recognisance for the appearance of the conusor to answer the charges against him, that it show the cause of taking it." *State* v. *Dagget,* 16 Mass. 446. 9 Ib. 520. 8 Term. R. 88. 1 Chitty's Crim. Law, 103. But the point here made has been directly decided in Kentucky, in the case of *West* v. *The Commonwealth,* 3 J. J. Marshall's R. 641. It was held in that case that "a recognisance to appear and answer a charge of gaming was invalid, and no judgment could be rendered on its forfeiture. It was admitted by the court that some kinds of gaming were punishable, but that there were other sorts not within the statute; and the principle is distinctly laid down, that no judgment can be rendered on a recognisance forfeited when the charge is not such as will warrant a criminal prosecution." It may be said that the indictment contains a sufficient charge, and that the recognisance must be construed in reference to it. We say in answer that the sureties in the recognisance cannot be held beyond the condition to which they have bound themselves. If that condition be to answer for what does not constitute an offence, then their obligation is simply void. The sureties knew nothing of the indictment; it is not recited in the recognisance, and they are not bound by it; but even if they were, we contend that the indictment itself sets out no offence whatever.

3. The third error assigned is, that the deputy sheriff who took the recognisance, had no authority to do so. By common law, the sheriff had power to bail only those persons who were indicted before him at his torn. 1 Chitty's Crim. Law, 98. Our statutes give the sheriff no authority to take recognisances or bail bonds in criminal cases. To take a recognisance is a judicial act. The sheriff is a mere ministerial officer. But it is said that in this case the judge of the first district allowed the bail, and approved the sureties, and that he delegated to the officer the power to take the recognisance. Now, if the taking a recognisance be a judicial act, and there is no statute authorising the sheriff to exercise such a function, it may well be doubted whether the judge can delegate such a power to him. We deny the right or capacity of the district judge to confer upon the sheriff, or his deputies, the power of taking recognisances in criminal cases. A recognisance taken in a case, or by a person unauthorised by law is void. 7 Mass. R. 280. 16 Ib. 198. 11 Mass. R. 337. 1 Marshall's Ky. R. 556. 5 Little R. 208. 8 John. R. 97. 7 Conn. R. 236. 2 Wash. C. C. R. 422. 2 Bibb's R. 96. 1 Conn. R. 406. 3 Robinson's Practice, 24.

4. But even if the judge had the authority to delegate this power to the deputy sheriff, then we assign as error, that the recognisance was not taken in accordance with the order of the court, or the direction of the judge. The judge did not order that the prisoner should give bail to appear before his own court again, to answer to the same charge. The bond intended by him was clearly an appeal bond, or recognisance of appeal. It cannot be presumed that he intended an illegal bond or condition.

But it was contended by the judge below, that the sureties could not set up these illegalities; that they were estopped by the maxim : " In whatever manner a man binds himself, he shall remain bound." Now, this maxim has no application whatever to bonds or obligations in criminal proceedings, and is wholly untrue in many classes of cases in mere conventional obligations; that it does not apply to judicial bonds, is decided by Judge Martin in the case of *Slocomb et al.* v. *Roberts,* 16 La. 173. There is another fatal defect in the recognisance. The judge directed the sureties to be held in the sum of $1,000 each. They are held in the recognisance for $2,000 each. *United States* v. *Gordon,* 1 Brock R. 190.

*Elmore,* Attorney General, for the State. The obligation entered into by *Jones* and his sureties is not an appeal bond; it does not purport to be one, on its face ; the court did not call for one—it has no connexion with, no reference to, the appeal—it is an undertaking to appear, not an undertaking "to prosecute his appeal."

But what is the name and nature of this obligation? By what rules and

STATE
v.
JONES.

principles shall we test its binding force and effect? The statutes of this State contemplate that bonds, recognisances, or "other obligations," shall be taken from persons charged with the commission of bailable crimes or offences, for their appearance before the proper tribunals. Is this instrument a bond, a recognisance, or any " other obligation?" See Greiner's Digest, 299, 615, 1860.

"A recognisance is an obligation of record, entered into before a magistrate duly authorised for that purpose, with condition to appear at the sessions or assizes. The party need not sign this recognisance; but the record thereof, is afterwards made out on parchment, and subscribed by the justice before whom it is taken. It is a matter of record as soon as taken and acknowledged, although not made out by the justice, and only entered on his books." Chitty's Crim. Law, p. 89, vol. 1. " If any of the conditions of that instrument be not complied with, it becomes liable to be estreated, (that is, taken out from among the other records and sent up to the exchequer,) which renders the party an absolute debtor to the crown for the sum or penalty therein mentioned." Petersdorff's Abridgement, p. 355, IX, Estreating Recognisances, vo. Bail in Criminal Cases. " It has many of the attributes of a judgment—it binds the lands of the cognizor. and execution may be issued upon it as upon a judgment." People v. Van Ess, 4 Wendell, 390. Jacobs' Law Dict. tit. Recognizance, Hence it follows that no one can take a recognisance who is not either a justice of record, or by commission. Because whatsoever is done in virtue of the king's commission ought to be taken as matter of record. See Hawkins' P. C, vol. 11, pp. 43 and 44, secs. 1 and 4. The instrument sued on in this case is no recognisance, but a bond, or ordinary obligation, such as that which the coroner was authorised to take at common law. (see Hawkins' P. C. vol. 2, p. 44, sec. 5), because not a justice of record, nor acting under the king's commission. It is a matter en pais, while a recognisance is a matter of record. This distinction will, as we shall presently show, render the authorities cited by the opposite counsel entirely inapplicable to the present case. Here there is an ordinary contract. Have Jones and his sureties complied with their contract? He had bound himself to appear before the First District Court on the first monday of December—has he done so? He had bound himself to answer a complaint brought there against him—has he done so? He had bound himself not to depart without leave of the court—has he done so? and yet each one of these things was a distinct and substantive obligation of his contract. See 10 Wendell, 431. 6 Halst. 124. 1 Blackf. 202. 2 Blackf. 226. Has he not, by his non-compliance with any one of the conditions of this bond, forfeited the penalty?

But it is objected that one of the conditions of the bond is, "that Jones shall appear to answer a complaint pending against him in the First District Court," when in fact there is no complaint there against him, to which he can answer. But, there was a complaint against Jones, in the First District Court. His appeal had suspended the action of the First District Court; but whatever might have been the result of that appeal he must necessarily have returned to the District Court for a new trial, if successful in his application to this court, or to see the proceedings commenced against him consumated, by submitting to his sentence, if unsuccessful.

The second objection, " that there is no offence set forth in the bond," is not more tenable than the first. In the first place it is not necessary that any offence should be specified, even in a recognisance, if the caption of the recognisance discloses the offence, as the record does in this case. A caption is a formal statement or recital of the proceedings in a case made by the clerk of the court below, when a case is certified to a superior court. This mode of making up a record is not known to our practice. Instead of a caption, an exact copy of the proceedings is sent up to the superior court. Now if it be sufficient at common law, that the offence appear in the caption ( Commonwealth v. McNeil, 19 Pick. 127), why should it not be equally so, in our system, when the offence appears on the record. If, at common law, the court to which the recognisance is estreated will look into the caption of the recognisance, which is no part of the recognisance, to ascertain the cause of taking it, why will this or any other court be debarred from looking into the record, to see that there was a cause for this bond? Neither the recognisance in the above cited case of McNeil, nor the bond in the case of the State v. Martel, 3 Robinson, 22, specified any offence. But it is submitted that the objection, even if it were of any value as against a recognisance, cannot affect a bond. A recognisance, as we have said

before, is a matter of record: it must show upon its face, or from the accompanying record, all the requisites of a perfect and legal obligation. It must show a cause, otherwise it will be presumed that there is none to support the obligation. The court cannot go out of the record to see it. It is a general rule, that a record proves itself, and that the court cannot look out of it to complete it. If, therefore, it sets forth an obligation, it must set it forth entire and complete, and the cause upon which it is bottomed. But a bond is a matter *en pais* ; it is not necessary that its cause should appear upon its face or in any other way. C. C. art. 1888. If there is no cause, or if the cause is illicit, it must be pleaded in avoidance of the obligation, and tried before "the country." It is evident that the cases cited by the opposite counsel upon this point, can have no application to bonds, which are very different from recognisances. It is true that some of these cases say that the cause must appear in the recognisance, to show that the court had jurisdiction. Now if such be the reason of the rule at common law, we have nothing to do with the rule itself here—"*cessante ratione legis cessat et ipsa lex.*" Our courts are courts of general jurisdiction, and it is not necessary in our pleadings to allege jurisdiction. If the court is without jurisdiction, it is a ground of exception.

The court will see, by an examination of the cases of the *State* v. *Daggett*, 16 Mass. 446; 9 Ibid, 520; 8 Term Rep. 88; 1 Chitty's Crim. Law, 103; and the much vaunted case of *West* v. *The Commonwealth*, 3 J. J. Marshall's Reports, 641, cited by the defendant's counsel, that in none of them was the cause of the obligation known to the court. There was no caption to the recognisance, and consequently the court could not say that there was a valid consideration for entering into the recognisance. The recognisance stood by itself before the court, unaided, unsupported, without explanation. The difference between these cases, and the one now before the court is plain. The whole proceedings are before the court, showing the character of the charge against the prisoner. The court can and must look to these proceedings, if necessary to supply any ambiguity or deficiency in the description of the offence as described in the bond. This is in conformity with the rule laid down by the best authorities. See the cases of *The People* v. *Blankman et al.* 17 Wendell, 252. *People* v. *Stager*, 10 Ibid. 433. *People* v. *Clary*, 17 Ibid. 375. 1 Chitty's Criminal Law, 105.

But it is contended, that this case is a new one in the courts of Louisiana. The counsel for the State thinks differently. This is a proceeding upon a bail bond, given by a party for his appearance before court, upon a day certain ; and is in conformity with the act of the 11th March, 1837. Bullard & Curry, 281. There is nothing new in the form and condition of the bond ; the circumstances under which it was entered into are novel ; but they do not in any way, alter or change the rules by which the obligation is to be construed. It is to be construed as a bail bond, and as all other bail bonds have been construed by our courts, in all their decisions previous to the adoption of the new constitution, giving the accused, in certain cases, the right of appeal to the Supreme Court.

As to the objection that the deputy sheriff had no authority to take the bond : The admitting one to bail is a judicial act; but the filling up of a bail piece, and receiving it when signed, are ministerial acts, which the sheriff, or his deputy, may do.

It is urged that the bond is not conformable to the order. which called for an appeal and not an appearance bond ; but the order itself shows that an appearance bond was contemplated. It is true that the bond is not conformable to the order in this respect, that the order called for two sureties in the sum of one thousand dollars each, whereas the cognisors bind themselves in the sum of two thousand dollars *in solido*. But they cannot complain if they chose to do more than was required of them. They have not set up error, and cannot be relieved from the consequences of their own acts. 14 La. 191. A bail bond, although arising out of a criminal proceeding, is a civil obligation, the effect of which should be tested by rules and principles which govern all other civil contracts entered into under our laws. The common law of England, or of the States, has nothing to do with it. In all actions for the recovery of the penalties of bonds our courts have always been guided by the principles of our own law. See 3 Mart. 568. 5 Mart. 194. 10 Mart. 197. 2 Ib. N. S. 672. 4 Ib. M. S. 21. 10 La. 416. C. C. 3029. *Mayor et al.* v. *Blache et al.* 6 La. 519.

The judgment of the court was pronounced by

STATE
v.
JONES.

KING, J. *Jones* was indicted for "entering a dwelling house in the night time, with intent to steal", and found guilty of the offence. From the judgment pronounced upon that conviction he appealed. Pending the appeal he was admitted to bail by the district judge, who fixed the amount of the bond to be furnished, and approved of the sureties offered. A bond was executed in the presence of the deputy sheriff by the accused and his sureties, conditioned for the appearance of the former before the First District Court on a day stated, "to answer to the complaint brought against him for entering a house without breaking, with intent to steal, and not depart thence without leave", &c. The defendant having failed to appear on the day fixed, the bond was declared forfeited, and a judgment rendered against the principal and his sureties for its amount. From that judgment the sureties have taken this appeal.

Before considering the objections to the judgment of the lower court set forth in the assignment of errors filed by the appellants, it becomes necessary to dispose of the question raised in regard to the character of the obligation entered into, and to determine whether it be a bond or a recognisance, and whether it was given to prosecute the appeal, or to secure the appearance of the accused to abide the final judgment of this court. The instrument is clearly not a recognisance. It was not entered into before a magistrate, nor with any of the forms indispensible to give it the force and effect of a recognisance, properly so termed. The order of the judge contemplated that a *bond* should be given, and not a recognisance entered into. It is equally clear that it is not an appeal bond. It was not ordered to be given on a motion for an appeal, but on an application of the accused to be admitted to bail. It has none of the conditions of an appeal bond, and the judge was not authorised by law to require an appeal bond, on granting an appeal in a criminal case. Acts of 1846, page 100, § 8.

The power of the judge to admit the accused to bail after conviction, underwent a very elaborate examination in the court below. Under our legislation on this subject, we think the question free from doubt. The 108th article of the constitution declares that "all persons shall be bailable by sufficient sureties, unless for capital offences where the proof is evident or presumption great." Prisoners convicted are not excepted. The act of the 30th May, 1846, § 10, p. 100, permits the accused to be bailed after conviction, if the offence be bailable, when an appeal is granted, on a *bond* to be approved by the judge. The only bond which the judge was authorised to require of the accused was a bail-bond, and it is with reference to such a bond that the objections urged by the appellants must be considered.

The appellants have assigned the following errors: 1st. The recognisance is conditioned that the defendant shall appear before the First District Court, on the first monday of December 1846, then and there to answer, &c., when in fact at the time the recognisance was taken, and when it was declared forfeited, no such complaint was pending in that court, but the same was pending in the Supreme Court. 2d. The deputy sheriff who took the recognisance had no authority to do so. 3d. The bond or recognisance sets forth no offence or crime whatever. 4th. The recognisance was not taken in accordance with the order of the judge.

I. We have seen that under the act of 1846, the district judge had not entirely divested himself of jurisdiction of the case by granting the appeal, but was still authorised to admit the defendant to bail. The bond for his appearance was properly made returnable before the District Court, which alone was

empowered to order the execution of the final decree which might be rendered on the appeal.   Acts of 1846, p. 102, § 5.

II.  It is contended that the taking of a recognisance is a judical act, which the sheriff, who is a ministerial officer, could not perform.  We have seen that the instrument under consideration is not a recognisance, but a bond.   The granting of bail, and determining the amount in which the parties shall be bound, are judicial acts.   These were performed by the judge in the present instance. The bond being subject to none of the rules peculiar to recognisances, may be validly executed in the presence of such officer of the court, or other person, as the judge may delegate to receive it.

III.  The third objection urged is, in our opinion, fatal to the validity of the bond, as far as relates to the sureties.   No such offence is known to our laws as that for which the accused bound himself to appear and answer.   The charge stated in the bond involved no violation of the criminal laws of the State, and if proved would have subjected the accused to no punishment.   It has been held " that no judgment can be rendered on a recognisance forfeited, when the charge is not such as will warrant a criminal prosecution".   3 J. J. Marshall's Rep. 641. The principle upon which the decision depends applies equally to bonds.   It has not been shown that the sureties were aware of the charge really preferred against *Jones,* and of which he was convicted; nor that they consented to become sureties for his appearance to answer any other charge than that stated in the bond.   As the bail-bond is not necessarily taken before the court, and in the present instance was not so taken, the sureties are not to be presumed to have any other information in regard to the cause of taking it than that derived from the instrument itself, nor that they intended to obligate themselves further or otherwise, than is stated in the bond.   If the cause of taking the bond be incorrectly stated the defect cannot, as regards the sureties, be supplied, as in the case of a recognisance, by reference to the indictment.   In the absence of proof the sureties cannot be supposed to have intended to answer for the appearance of the accused to meet a grave criminal charge, when the bond itself sets forth the charge to be an act involving no crime whatever.

In the case of the *State* v. *Martel,* (3 Rob. p. 22,) to which our attention has been directed, the condition of the bond was for the appearance of the accused " to answer such matters and things as shall be objected against him on behalf of the State, and not depart", &c.   It was not objected in that case that the bond was insufficient in consequence of no specific offence having been stated, nor is it necessary to determine whether such an objection could have been successfully urged.   There is a marked difference between the bond in that case and the present.   In the former, the sureties bound themselves for the appearance of the principle to answer all charges that might be found against him.   In the present, they have obligated themselves for the appearance of the accused to answer to a specific charge, which is not a punishable offence, and therefore not a sufficient cause upon which to found a bond.

It is therefore ordered that the judgment of the District Court, as far as relates to the appellants *Howell* and *Mitchell,* be reversed, and that there be judgment in favor of said appellants.